1

The Honorable Robert B. Leighton

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9
VLADIK BYKOV, Pro Se,

10

Plaintiff,

11

vs.

12

EACCELERATION CORPORATION, d/b/a
WWW.EACCELERATION.COM; d/b/a
13  WWW.STOP-SIGN.COM,

14

15       Defendant.

**No. CV05-5251(RBL)**

**MOTION FOR PROTECTIVE ORDER**

**NOTE ON MOTION CALENDAR:**
**December 30, 2005**

16

17
## I. MOTION

18
Defendant eAcceleration, by and through the undersigned counsel moves this court for a

19  protective order pursuant to Rule 26(c) that: 1) prohibits plaintiff from directly contacting

20  employees or representatives of eAcceleration; 2) provides that all depositions in this matter take

21  place at the offices of Bennett Bigelow & Leedom and not at the apartment of the plaintiff,

22  which is located in Redmond Washington; and 3) relieves defendant of answering plaintiff's

23  requests for admission, or, in the alternative, requires that such requests for admission count

24  against plaintiff's interrogatory limit.

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 1

1

2   For the reasons set forth below and in the declarations attached, defendant objects to submitting

3   to depositions in the plaintiff's home, and seeks an order that requires plaintiff to direct all

4   communications to eAcceleration and its employees to counsel for eAcceleration. Defendant

5   also seeks relief from plaintiff's improper and excessive requests for admission.

6                                    **II. FACTS**

7   **A.     Facts Related to Witnesses and Depositions**

8          **1.     Procedural**

9          Plaintiff and the undersigned met for a Rule 26(f) conference on December 1, 2005. At

10  the conference, the parties agreed that all depositions would be scheduled at the mutual

11  convenience of the plaintiff, defense counsel, and the witnesses. Dec. of Marie R. Westermeier

12  ("Westermeier Dec."), ¶2. Plaintiff announced his desire to take videotaped depositions at his

13  apartment in Redmond Washington. Id. Counsel for eAcceleration informed plaintiff that she

14  would object to depositions in Redmond because it is inconvenient for the witnesses, who live

15  and work in Poulsbo. Id. Counsel has since learned that several of the key witnesses are

16  extremely uncomfortable with the prospect of being captive in the plaintiff's home for any

17  purpose, but especially for a deposition. Id. at ¶ 3.

18         One of the employees of eAcceleration who expressed discomfort with being deposed in

19  plaintiff's apartment is Jennifer Engstrom. Westermeier Dec., ¶ 3. Ms. Engstrom is a part-time

20  employee at eAcceleration. Counsel for eAcceleration told Mr. Bykov that she would consult

21  with Ms. Engstrom to determine her availability, and provide some dates for a deposition. Id. at

22  ¶ 2. The very next day, without consulting counsel's schedule or waiting to hear about the

23  witness' availability, Mr. Bykov noted Ms. Engstrom's deposition for January 6 at his

24  apartment in Redmond. Id. Again, defense counsel informed plaintiff that his apartment was

MOTION FOR PROTECTIVE ORDER - 2

1   not a suitable location for the deposition. Id. at ¶ 3.  Plaintiff refused to discuss alternative

2   venues and instead noted two more depositions at his apartment, without bothering to clear the

3   dates with counsel.  Id. at ¶ 4.  Counsel for defendant objected a third time, and told plaintiff

4   that the witnesses were uncomfortable going to plaintiff's apartment for their depositions.

5   Plaintiff responded by saying that he would subpoena the witnesses if they did not voluntarily

6   submit to depositions in his apartment.  Exhibit 11 to Westermeier Dec.  Defendant and each

7   witness objects.  Id.

8       **2.    Substantive facts related to Plaintiff's history with Ms. Engstrom and other
            employees of eAcceleration**

9

10      Jennifer Engstrom supervised the training that plaintiff underwent when he was initially

10  hired by eAcceleration.  Declaration of Jennifer Engstrom ("Engstrom Dec.") ¶¶ 1 at 2.  During

11  the course of that training and afterward, the plaintiff refused to follow Ms. Engstrom's

12  instructions, or to complete assignments as part of the training program.  Id. at ¶ 3.  As a result,

13  Ms. Engstrom was unable to graduate the plaintiff from the training program.  Even though Mr.

14  Bykov did not satisfactorily complete training, eAcceleration gave him an opportunity to work in

15  a different position with a supervisor other than Ms. Engstrom.  Id. at ¶ 4.  After Ms. Engstrom's

16  work relationship with the plaintiff ended, the plaintiff made overtures to Ms. Engstrom that

17  were not welcome.  Id. at ¶ 5.  For example, he invited her to dinner at his apartment after she

18  told him that she did not wish to have any further interaction with him.  Ms. Engstrom declined

19  the dinner invitation.   When the plaintiff persisted, Ms. Engstrom refused to have further

20  communication or contact with the plaintiff.  Id.

21      Following his termination from eAcceleration in July 2004, the plaintiff repeatedly

22  attempted to contact another former supervisor, David Nason, who had terminated the plaintiff.

23  Declaration of David Nason ("Nason Dec.") ¶ 4.  Mr. Nason was extremely uncomfortable when

24

MOTION FOR PROTECTIVE ORDER - 3

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1   he learned that the plaintiff had entered his personal website where Mr. Nason kept information

2   and photos about his family.  Id.  Mr. Nason removed some personal information from the

3   website and changed his email and web address to avoid further contact with the plaintiff.  He

4   also took steps to block emails from the plaintiff.  Id.

5        Also following his termination from eAcceleration, the plaintiff has repeatedly sent

6   emails to the president of the company, Clint Ballard.  Declaration of Clinton Ballard ("Ballard

7   Dec.") ¶ 6.  Mr. Ballard initially responded, but over time he grew tired of the endless barrage of

8   emails from the plaintiff and he stopped responding.  Id.  Counsel for eAcceleration requested

9   the plaintiff to direct all of his communications to Mr. Ballard and eAcceleration, to counsel.  Id.

10  at ¶ 7.  Plaintiff ignored the request and continued to send emails to Mr. Ballard, as well as to

11  other employees at eAcceleration.  Id.

12       In November 2005, the plaintiff began telephoning eAcceleration employees who are

13  potential witnesses in this lawsuit, including Ms. Engstrom.  The plaintiff repeatedly called Ms.

14  Engstrom at home – up to six times per day - for several days during the Thanksgiving weekend.

15  Ms. Engstrom refused to take the calls.  Engstrom Dec. ¶ 6.  Ultimately, Ms. Engstrom's

16  husband took the call and told the plaintiff that Ms. Engstrom did not wish to speak to him and

17  asked the plaintiff not to call her again.  Id.

18       The plaintiff already has noted the depositions of Jennifer Engstrom, Clint Ballard and

19  Nathan Inabinett.  Westermeier Dec., ¶¶ 2, 4.  Defendant anticipates that plaintiff also will

20  depose John Bower, David Nason, and other current eAcceleration employees.  All of these

21  witnesses have expressed discomfort at the prospect of being subject to a deposition in the home

22  of the plaintiff due to their past interactions with him and their concern about his behavior

23  toward them since he left the employment of eAcceleration.  Id. at ¶ 3.  All would have to travel

24  from Poulsbo to plaintiff's apartment in Redmond, and all of them have expressed a preference

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 4

1   for meeting at a more convenient location in downtown Seattle.  Nason Dec., ¶ 5, Ballard Dec., ¶

2   8.  None of the witnesses wants to be contacted at home or at work by the plaintiff, and all prefer

3   that he communicate to them through counsel for eAcceleration.  For these reasons, defendant

4   seeks a protective order that requires the plaintiff to take all depositions in this case at the offices

5   of Bennett Bigelow & Leedom, and a protective order that requires the plaintiff to contact

6   employees at eAcceleration solely through counsel.

7   **B.    Facts Related to Written Discovery**

8         In the two weeks following the parties' Rule 26(f) conference, the plaintiff has

9   propounded one set of interrogatories, two sets of requests for production, one notice of intent to

10  inspect property, and ten sets of requests for admission.  Westermeier Dec. ¶ 6.  He also has

11  noted the depositions of three employees of eAcceleration: Clint Ballard, Jennifer Engstrom, and

12  Nathan Inabinet.  Id. at ¶¶ 2, 4.  It is plaintiff's Requests for Admission ("RFA") that are the

13  subject of this motion.

14        Plaintiff propounded his first set of RFAs on December 6, 2005, his second set on

15  December 7, the third set on December 8 and a fourth set on December 9.  Id. at ¶ 6.  The first

16  four sets of requests for admission seek the admission of minute facts related to his recruitment

17  and interview at eAcceleration.  See Plaintiff's Requests for Admission, attached as Exhibits 1 -

18  10 to the Declaration of Marie Westermeier.  Similarly, the questions in the Second set of RFAs

19  quote innocuous statements that Mr. Ballard made in certain emails.[1]

20        From these initial requests for admission, it appeared to defendant that plaintiff intends to

21  litigate this case by requesting admissions of the most minute facts in separate endless requests

22

23  [1] While these requests, by themselves, would not cause defendant to move for a protective order, the sheer number
    of seemingly pointless questions and the fact that plaintiff continues to submit new requests on a daily basis has
    caused defendant to seek relief now.

24

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 5

1   for admission.    After receiving the fourth set of Requests for Admission, defense counsel

2   requested a discovery conference by telephone. Westermeier Dec. ¶ 6. Plaintiff refused to speak

3   by telephone and requested that the conference occur by email instead. Id. Not wanting to get

4   into an endless email exchange with the plaintiff,[2] defense counsel informed plaintiff that the

5   requests for admission were improper and requested that the plaintiff withdraw the requests. Id.

6   Plaintiff denied that the requests were improper and instead propounded the fifth and sixth sets

7   of RFAs together on December 12. Id. Since that time, he has submitted at least one set of

8   RFAs on each and every business day. Id. The validity of the requests has become increasingly

9   questionable, as is apparent from the following examples:

10      **Request 59**:   Admit that Mr. Clinton L. Ballard only hires those people to work at

11      Eacceleration Corporation who are smart.

12      **Request 60**:    Mr. Clinton L. Ballard received an exceptional score on his SAT

13      examination.

14      **Request 64**: Admit that Eacceleration is concerned about the intelligence of people that

15      are hired to work for Eacceleration Corporation.

16      **Request 73**:  Admit that Mr. Clinton Ballard discriminates against people based on their

17      ability to play chess.

18      These questions are irrelevant to any claims in the case, are not calculated to lead to the

19   discovery of admissible evidence, and are not, in any event, proper requests for admission. The

20   fact that plaintiff has submitted 100 requests in the first two weeks of discovery, that the requests

21   are of increasingly questionable relevance, and that plaintiff has been unwilling to withdraw or

22   modify or limit the requests in any way, causes defendant to seek relief from the Court at this

23

24   [2] Nearly every prior communication between the plaintiff and defense counsel has been unproductive at best. Westermeier Dec., ¶ 8. Most email exchanges have turned into very lengthy and exasperating conversations in

1   juncture.  The inanity of the questions suggests that they are being propounded to harass the

2   defendant, and not for any legitimate discovery purposes.  Defendant asks that it be relieved of

3   answering the requests or, in the alternative, that the requests count against plaintiff's

4   interrogatory limit of 25 questions.

## III.  EVIDENCE RELIED UPON

6   1.      Declaration of Marie Westermeier

7   2.      Declaration of Jennifer Engstrom

8   3.      Declaration of David Nason

9   4.      Declaration of Clinton Ballard

## IV.  LEGAL ARGUMENT

11          Under Rule 26(c), upon motion by a party or by the person from whom discovery is

12   sought, the court may make any order which justice requires to protect a party from "annoyance,

13   embarrassment, oppression, or undue burden or expense," including a designation of the time or

14   place of a deposition.  The plaintiff's behavior during the course of discovery and his behavior

15   toward eAcceleration employees both when he was employed at eAcceleration and afterward has

16   been harassing and annoying.  When told that the witnesses did not wish to be deposed in his

17   apartment and offered the use of a conference room in a law office, the plaintiff flatly refused,

18   without attempting to accommodate the witnesses in any way, and without offering any

19   explanation or justification for insisting on taking the deposition at his apartment.  The witnesses

20   do not wish to have any direct contact with Mr. Bykov.  They do not wish to speak with him, nor

21   do they wish to have email communications or any other kind of correspondence with the

22   plaintiff.  In view of the witnesses' acute discomfort with the plaintiff's behavior, the witnesses

23   would be especially uncomfortable being deposed in his apartment, rather than in a more public

24

which very little, if anything is resolved.    Westermeier Dec.¶ 7.

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 7

1    location such as a law office in downtown Seattle.  Fairness to the witnesses requires that the

2    depositions occur in Seattle and not in the plaintiff's home in Redmond.  Fairness also requires

3    that the plaintiff not be permitted to contact any of the witnesses directly.

4         In addition to treating witnesses unfairly, plaintiff also has begun to abuse the discovery

5    process by submitting excessive numbers of requests for admission (100 to date).  The limits on

6    discovery, and particularly the limits on written interrogatories imposed by the federal rules were

7    created to minimize discovery abuses.  The plaintiff is doing an end run around those limits and

8    harassing defendant by propounding requests for admission on an almost daily basis.  Utilizing

9    interrogatories disguised as requests for admission in an attempt to circumvent a local rule

10   limiting the number of interrogatories is an abuse of the discovery process.  *Olympia Holding*

11   *Corp v. Whitaker*, 189 BR 846 (1995).

12        Most of the requests themselves are inane and improper and should be stricken.  For

13   example, Requests 7-12 seek admissions about quoted text from email exchanges and

14   verification of the IP address.  This is improper.  *See, Henry v. Champlain Enterprises, Inc.*, 212

15   FRD 73 (D.N.Y. 2003) (request to admit the accuracy of quoted textual material from a

16   particular document is improper).   The content of these requests is of marginal value to

17   plaintiff's claims, yet they require the defendant to expend time and money to answer.  As such,

18   they are annoying at best and clearly improper.

19        Although the requests for admission, taken individually, do not appear to be unduly

20   burdensome, they appear to be limitless in scope and endless in number, and lacking any

21   evidentiary purpose.  This is improper.  The rule was not intended to be used to cover the entire

22   case and every item of evidence.  *Benton v. McCarthy*, 23 FRD 235 (D.N.Y., 1959).  Admissions

23   should not be of such great number and broad scope as to cover all issues of a case.  *Lantz v.*

24

MOTION FOR PROTECTIVE ORDER - 8

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

1  *New York Cent R. Co.*, 37 FRD 69 (N.D. Ohio, 1963) Requests for admission "obviously should

2  not be sought in an attempt to harass an opposing party."

3      Many of the plaintiff's requests appear to have no purpose other than to harass the

4  defendant.  Sixty-five of the requests are geared toward the president and CEO, Clint Ballard,

5  whose deposition has been noted.  Most of those requests do not advance the plaintiff's case in

6  any way.  For example, there is no claim that defendant discriminated against plaintiff or failed

7  to accommodate him in the hiring process, yet the first four sets of RFAs concern the pre-hiring

8  process:

9      **Request 16**:  Admit that Mr. Ballard looked at Plaintiff's resume while Mr. Ballard

10          interviewed Vladik Bykov for a job at Eacceleration Corporation.

11     **Request 18**:  Admit that Mr. Ballard asked the Plaintiff, Vladik Bykov, questions

12          regarding Plaintiff's experience and education during Plaintiff's interview.

13  Other requests also appear to have no relevance to any of plaintiff's claims:

14     **Request 39**:  Admit that the email Mr. Ballard wrote in RFA #38 came from the IP

15          address 65.02.176.31.

16     **Request 40**:  Admit that the IP address 65.102.176.31 is an IP address that once was or

17          currently is an IP address originating at Eacceleration Corporation.

18     **Request 44**:  Admit that Jennifer Engstrom, on or about May 20th, 2004, made a request

19          to Plaintiff, Vladik Bykov, that he stay after work so that Jennifer Engstrom could talk to

20          him.

21     **Request 45**:  Admit that the Plaintiff, Vladik Bykov, stayed at work after 5pm on

22          Thursday, May 20th, 2004, to speak with Jennifer Engstrom.

23

24

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 9

1   **Request 49**:   Admit that Plaintiff, Vladik Bykov, attempted to complete training
2   assignments to the best of his abilities during training while employed at eAcceleration
3   Corporation.

4   **Request 52**:   Admit that Plaintiff, Vladik Bykov, told eAcceleration that he was very
5   happy to participate in training.

6   **Request 58**: eAcceleration Corporation is not an institution of higher learning.

7   **Request 79**:  Admit that Mr. Clinton Ballard, during plaintiff's interview, attempted to
8   find plaintiff a place to live in Poulsbo.

9   Other requests are nearly unintelligible:

10   **Request 87**:  Admit that plaintiff, Vladik Bykov, was doing worse than others.

11   **Request 95**:  Admit that Mr. Clinton L. Ballard knows the details of what happened
12   during time when plaintiff was in training.

13   **Request 97**:  Admit that Mr. Clinton L. Ballard was not interested in knowing what
14   happened during training when plaintiff was in training and therefore, did not want to
15   know what happened during training from plaintiff's point of view.

16   **Request 100**:  Admit that eAcceleration never made a record of anything that plaintiff,
17   Vladik Bykov, did at eAcceleration.

18   If plaintiff were to limit his RFAs to the 100 already propounded, defendant would make
19   appropriate objections and answer as it is able.  It appears, however, that the first ten sets of
20   RFAs may be just the beginning of an endless series of requests regarding minute details and
21   non-issues.  While a complicated case may justify a large number of requests for admission, a
22   garden variety employment case with an individual plaintiff does not justify numerous RFAs.
23   *See, Wigler v. Electronic Data Systems Corp.*, 108 FRD 204(1985).  Although *Wigler* involved
24   1664 requests for admission that the court held to be excessive and unnecessary, the plaintiff in

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 10

1  this case, having made 100 requests for admission in the first two weeks of discovery, appears to

2  be on track to propound a similar number of requests in this case.  To the extent that the requests

3  are interrogatories masquerading as requests for admission, they represent an improper attempt

4  to bypass the limits on written discovery imposed by the local rules.  To the extent that they are

5  not relevant to issues in this case, the RFAs appear to have been propounded for the sole purpose

6  of harassing defendant rather than to elicit any admissions related to pertinent issues in the case.

7  It is that kind of abuse that the defendant seeks to stop.

8      In light of the foregoing, defendant seeks a protective order to limit the plaintiff's future

9  continued use of requests for admission to avoid the limits on written discovery that apply to

10  interrogatories.

11                              **V.  CONCLUSION**

12      For the foregoing reasons, eAcceleration requests an order prohibiting the plaintiff from

13  communicating directly with the employees of eAcceleration who have been identified in this

14  motion, and from communicating directly with any other past or present employees who have

15  requested or who may in the future request that the plaintiff refrain from contacting them.  The

16  order should require plaintiff to check with counsel for eAcceleration before contacting

17  employees.  eAcceleration further requests that all depositions take place at the law offices of

18  Bennett Bigelow & Leedom, and that Defendant be relieved of any obligation to defend

19  depositions at the home of the plaintiff.  Finally, Defendant requests an order that relieves

20  defendant of answering more than 25 Requests for Admission.

21      Dated this 20th day of December, 2005.

22                                    s/Marie R. Westermeier
                                       WSBA# 18623
23                                    Bennett Bigelow & Leedom, P.S.
                                       1700 Seventh Avenue, Suite 1900
24                                    Seattle, WA 98101

1

Telephone: (206) 622-5511
Fax: (206) 622-8986
mwestermeier@bbllaw.com

2

3

4    w:\wdclient\1330\00013\mm529263.doc

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

MOTION FOR PROTECTIVE ORDER - 12