HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VLADIK BYKOV, Pro Se,

    Plaintiff,

    v.

EACCELERATION CORPORATION, d/b/a WWW.EACCELERATION.COM, d/b/a WWW.STOP-SIGN.COM,

    Defendant.

Case No. C05-5251 RBL

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**I.    Introduction.**

This matter comes before the Court on the Defendant's Motion for Partial Summary Judgment. [Dkt. #43]. eAcceleration Corporation (the "Defendant" or "eAcceleration") moves for partial summary judgment on Vladik Bykov's (the "Plaintiff") Seventh Cause of Action, alleging that the Defendant violated 42 U.S.C. §§ 12101, 12112(b)(6) of the Americans with Disabilities Act of 1990 (the "ADA") by administering a written test to applicants for technical support positions. For the reasons stated below, the Defendant's motion is GRANTED.

Defendant eAcceleration is a computer software company located in Poulsbo, Washington. eAcceleration's president, Clint Ballard ("Ballard"), hired the Plaintiff in the spring of 2004. During the Plaintiff's employment interview, on April 30, 2004, the Plaintiff disclosed to Ballard that he suffered from

various mental problems as a result of being physically abused as a child. Ballard nevertheless offered the Plaintiff a position working as a liaison between the company's marketing and development departments.

At this time, the Plaintiff requested that he first be given an opportunity to work as a Support Technician before beginning his position as a liaison. The Defendant consented but informed the Plaintiff that he would first need to complete a training program for persons entering into technical support positions. Shortly after the Plaintiff's training began, he started experiencing difficulties learning the material and completing assignments, which allegedly resulted from his mental and emotional impairments. The Plaintiff was then required to take a placement test covering math, verbal and logic skills, which all new applicants for technical support positions typically took when they first applied for work. However, because the Plaintiff was hired directly by the president he initially bypassed this requirement. The Plaintiff received a passing score on this test.

As a result of his difficulties with the structure of the traditional training program, the Plaintiff requested that he be relieved of this responsibility, and instead participate in a different, hands-on program, called "job shadowing." The Plaintiff was allowed to make this substitution. He was then assigned to two separate work assignments under two different supervisors in the technical support department, on which he also performed unsatisfactorily. The Plaintiff was then terminated on July 9, 2004 for performance-related issues and repeated failure to follow directions.

**II.     Discussion.**

    **A.     Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of

ORDER    2

the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial. *Id.* at 249. In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Standing.

The U.S. Constitution limits the federal courts to hearing "Cases" and "Controversies." Art. III, § 2. "One of [the] landmarks setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III . . . is the doctrine of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992). This "irreducible constitutional minimum" of standing has three distinct components: (i) the Plaintiff must have suffered an "injury in fact" which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (ii) there must be a "causal connection" between the injury and the conduct complained of, and (iii) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-561. The party invoking the federal jurisdiction bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

Here, the Plaintiff has set forth specific facts, which for purposes of this summary judgment motion will be taken as true, and has therefore successfully met each of the standing requirements. First, the Plaintiff's claim to injury here is being dismissed from training, not being given an opportunity to work as a Support Technician, and, ultimately, having been terminated from his position at eAcceleration. *See* Plaintiff's Response to the Defendant's Motion for Partial Summary Judgment, p. 9 [Dkt. #51]. These facts constitute the requisite "injury in fact" that is concrete and particularized and actual or imminent. Next, for purposes of standing, there is a "causal connection" between the Plaintiff's termination and the

conduct complained of, since he was allegedly terminated as a result of the Defendant's failure to accommodate him.  Third, since the Plaintiff is seeking both injunctive relief and an award of monetary damages, his injury here may be properly redressed by a favorable decision by the court.  Thus, the Plaintiff has established the criteria necessary for standing under Article III.

### C. The Americans with Disabilities Act of 1990.

#### 1. The Plaintiff's "Disability" Under 42 U.S.C. § 12102(2)(A).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . ." *See* 42 U.S.C. § 12112(a).  The definition of the term "discriminate" includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability . . . unless the standard, test or other selection criteria . . . is shown to be job-related for the position in question and is consistent with business necessity . . ." *See* 42 U.S.C. § 12112(b)(6).  Furthermore, the term "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . ." *See* 42 U.S.C. § 12102(2)(A).

The Plaintiff here has a longstanding and well-documented history of mental and emotional impairments that have affected him throughout a majority of his life.  *See* Third Declaration of Vladik Bykov, pp. 1-3 [Dkt. #52].  Beginning in 1991, when he enrolled in the California Institute of Technology ("Caltech") in Pasadena, California, the Plaintiff experienced various psychological disorders for which he sought medical treatment and hospitalization.  *Id.*  The Plaintiff eventually disenrolled in Caltech and relied on Supplemental Security Income ("SSI") from approximately 1993 through 2001.  *Id.*  Thus, it is undisputed that the Plaintiff suffers from a "disability" as defined in § 12102(2)(A) of the ADA.

#### 2. The Plaintiff's Prima Facie Case of Discrimination as a Disparate-Treatment Claim.

ORDER 4

The Plaintiff asserts that his Seventh Cause of Action is a disparate-treatment claim of discrimination under the ADA. It is important to note that the Plaintiff is not alleging that this is a disparate-impact claim, as there is a fundamental difference in the analysis of these two claims. Indeed, the Supreme Court has cautioned against blending these claims. "Because 'the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes,' courts must be careful to distinguish between these theories." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981)).

Generally, under a disparate-treatment claim, it is alleged that the employer has "simply treat[ed] some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Id.* (quoting *Teamsters v. United States*, 431 U.S. 324, 335 (1977)). Liability in these types of claims "depends on whether the protected trait . . . actually motivated the employer's decision." *Id.* By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* Under this theory of discrimination, "a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a disparate-treatment case." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645-646 (1989). Both disparate-treatment and disparate-impact claims are cognizable under the ADA. *Raytheon Co.*, 540 U.S. at 53.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court articulated a three-part test for assessing the burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Id.* at 802. Second, if the plaintiff succeeds in proving the prima facie case the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the

ORDER 5

employee's rejection." *Id.* Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978). As noted by the Ninth Circuit, the *McDonnell Douglas* burden-shifting framework, applies equally to cases brought under the ADA as to traditional Title VII discrimination cases. *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001)

In order for the Plaintiff to create a prima facie case four separate requirements must be met: (i) the Plaintiff must belong to a statutorily protected class, (ii) he must have applied for and was qualified for an available position, (iii) he must have suffered an adverse employment action, and (iv) the Plaintiff must show circumstances that support an inference of discrimination. *Swierkiewicz v. Sorema*, 534 U.S. 506, 506 (2002). As an individual who has a history of various mental and emotional impairments, the Plaintiff clearly belongs to a statutorily protected class, and satisfies the first element of his prima facie case. Viewing the evidence in the light most favorable to the non-moving party, the second element is also met as the Plaintiff is a qualified computer professional, who has been certified with an A+ and a Network + computer certificate. *See* Third Declaration of Vladik Bykov, p. 3 [Dkt. #52]. And since the Plaintiff was terminated from his position as a Support Technician on July 9, 2004, this constitutes the requisite "adverse employment action." The problem, however, lies in the fourth element of the Plaintiff's prima facie case, since he has not shown circumstances that support an inference of discrimination here.

First, the Plaintiff claims that after he gave the Defendant notice of his disability and difficulties in training, the Defendant "singled out Plaintiff and asked him to take an intelligence exam." *See* Plaintiff's Response to the Defendant's Motion for Partial Summary Judgment, p. 2 [Dkt. #51]. The Defendant's policy, however, was to administer the placement test to all persons who were candidates for technical

support positions. *See* Defendant's Motion for Partial Summary Judgment, p. 6 [Dkt. #43]; *see also* Third Declaration of Vladik Bykov, (Ex. 5) [Dkt. #52]. Thus, although the Plaintiff did not initially take the test at the time of his first employment interview, he would still have been required to complete this exam since he had been placed in the position of a Support Technician.

Second, the Plaintiff alleges that the Defendant did not accommodate his disability, because after taking the examination, the Defendant set the Plaintiff "on track to be terminated." *See* Plaintiff's Response to the Defendant's Motion for Partial Summary Judgment, p. 4 [Dkt. #51]. The ADA requires employers to accommodate employee's known disabilities. This requirement is also part of the larger limitation that employers must not discriminate against qualified individuals with disabilities in providing them with an equal opportunity to benefit from the full-range of employment-related opportunities available to others. *See* 42 U.S.C. § 12101(b); *see also* 42 U.S.C. § 12112(a). Here, the Defendant's efforts to accommodate the Plaintiff's disability were reasonable and satisfied the requirements of the ADA.

For instance, after the Defendant learned of the Plaintiff's disability he consented to the Plaintiff's request to be placed in a position different than which he was originally hired to fill. *See* Third Declaration of Vladik Bykov, p. 4 [Dkt. #52]. Then after the Plaintiff began experiencing difficulties learning and completing assignments within the traditional training program for Support Technicians, the Defendant allowed the Plaintiff to skip this program and instead participate in a program called "job shadowing," which would better fit his learning style. *Id.* at 5-6. Since the Plaintiff continued to demonstrate problems with completing the training materials, he was subsequently placed on two separate projects under two different managers. Finally, after the Plaintiff failed to perform satisfactorily on these projects as well, his employment was terminated. *See* Declaration of David Nason, p. 1 [Dkt. #46]. The Defendant has exhibited sufficient attempts to accommodate the Plaintiff here. Moreover, the Plaintiff has not provided any facts that support his claim that he was "set on track to be terminated." Instead, the facts indicate

ORDER 7

repeated and consistent efforts to accommodate the Plaintiff and his disability.

Third and finally, under current doctrine there is a "strong inference" that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1096 (9th Cir. 2005). This holding is based upon the principle that "an employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs." *Id.* Here, as the president of eAcceleration, Clint Ballard was responsible for hiring the Plaintiff, as well as his termination. Significantly, during his employment interview the Plaintiff notified Ballard of his disability and his history of physical abuse. *See* Third Declaration of Vladik Bykov, p. 4 [Dkt. #52]. Nevertheless, Ballard hired the Plaintiff as a Support Technician and as a liaison. The timing between these two actions also supports the presumption that there was no discriminatory animus on behalf of the Defendant. Indeed, the Plaintiff was hired on April 30, 2004 and was fired only two months later, on July 9, 2004. Based upon the foregoing, the Plaintiff has neither established a prima facie case of disparate-treatment, nor has he made out a case of bias necessary to overcome the same-actor inference.

### 3. The Plaintiff's Prima Facie Case of Discrimination as a Disparate-Impact Claim.

Although the Plaintiff brings his Seventh Cause of Action as a disparate-treatment claim, it appears to the Court that this is fundamentally a disparate-impact claim. The Plaintiff's Seventh Cause of Action states, "eAcceleration, by forcing Plaintiff to take a standardized general intelligence test, is in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*" *See* Plaintiff's Complaint for Damages, p. 8 [Dkt. #3]. As provided above, disparate-impact claims typically "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co.*, 540 U.S. at 52.

The analysis under this theory utilizes the *McDonnell Douglas* burden-shifting framework, as well, but requires the Plaintiff, in making out his prima facie case, to demonstrate that the test causes a disparate-impact on the basis of the Plaintiff's disability. *Assoc. of Mexican-American v. State of California*, 231 F.3d 572, 584 (9th Cir. 2000). More specifically, "the issue is whether a neutral selection device . . . screens out disproportionate numbers of [the protected class.]" *Raytheon Co.*, 540 U.S. at 54.

Here, the Plaintiff has provided no evidence establishing that the Defendant's placement test impermissibly screens out selected individuals who suffer from mental or emotional impairments. As such, the Plaintiff has not demonstrated a prima facie case of disparate-impact under the ADA. The Defendant's Motion for Partial Summary Judgment is GRANTED. [Dkt. #43].

IT IS SO ORDERED this 2nd day of May, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE